UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAROLETTA D. PARHAN, | No. 2:12-cv-2765 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On November 30, 2008, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on July 22, 2008.[1] (Transcript ("Tr.") at 14.) Plaintiff's application was denied initially, (id. at 118-

---

[1] Although plaintiff had previously filed an application for SSI benefits on February 17, 2005, which was denied, the ALJ's March 9, 2011 decision at issue here found that plaintiff had rebutted the presumption of continuing non-disability in light of the new evidence of impairments. (Tr. at 14-15.)

22), and upon reconsideration. (Id. at 126-31.) Thereafter, plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on December 15, 2010. (Id. at 38.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 38-39.) In a decision issued on March 9, 2011, the ALJ found that plaintiff was not disabled. (Id. at 28.)

The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since November 30, 2008, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: major depression, post-traumatic stress disorder, obsessive compulsive disorder, panic disorder, degenerative disk (sic) disease of the cervical and lumbar spine, and bilateral carpal tunnel syndrome (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant may frequently (but not constantly) reach, handle, finger and feel with her upper extremities. She is capable of simple repetitive tasks in a non-public setting, including no interaction with the general public on the telephone. She may occasionally interact with coworkers or supervisors. The claimant is precluded from working at unprotected heights or with dangerous machinery. She can never climb ladders, ropes, or scaffolds and can only occasionally climb stairs or ramps.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on March 13, 1974 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 30, 2008, the date the application was filed (20 CFR 416.920(g)).

(Id. at 17-28.)

On May 30, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's March 9, 2011 decision. (Id. at 5-7.) After plaintiff was granted an extension of time to file a civil action, (id. at 1), plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 8, 2012.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff asserts the following five principal claims: (1) the ALJ erred by rejecting plaintiff's subjective testimony; (2) the ALJ improperly rejected the medical opinion of an examining physician; (3) the ALJ failed to account for the testimony of a lay witness; (4) the ALJ failed to pose a legally adequate hypothetical question to the Vocational Expert; and (5) new evidence of disability must be considered.[2]

**I.     Plaintiff's Subjective Testimony**

Plaintiff asserts that the ALJ erred by rejecting plaintiff's testimony concerning the severity of her mental health impairments. (Pl.'s MSJ (Dkt. No. 18) at 11-15.)[3] In this regard, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

/////

---

[2] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Tr. at 24.) With

5

respect to plaintiff's mental health impairments, the ALJ rejected plaintiff's testimony suggesting more restrictive mental limitations after finding that plaintiff's mental status had remained stable, that plaintiff had demonstrated a lack of compliance in taking her medications and that plaintiff had made inconsistent statements concerning the severity of her symptoms. (Id. at 25-26.)

The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" Molina v. Astrue, 674 F.3d at 1113-14 (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008)). Moreover, the ALJ is also permitted to consider evidence of inconsistencies when evaluating a claimant's credibility. Thomas, 278 F.3d 958-59.

Here, the record reflects that plaintiff was not fully compliant in taking the medications prescribed for her mental health condition. (Tr. at 264, 266, 274, 275, 416, 426.) The record also reflects that despite testifying that she could only clean "sometimes" and relied on help, (id. at 58-59), plaintiff also stated that she cleaned her home compulsively, (id. at 303), and excessively, (id. at 316), frequently cleaning at night when she was supposed to be sleeping, because cleaning always took "precedence." (Id.)

The ALJ having cited these reasons in making the credibility determination, the court finds that the ALJ provided clear and convincing reasons for discounting plaintiff's testimony and, therefore, plaintiff is not entitled to summary judgment in her favor with respect to this claim.

## II. **Medical Opinion Evidence**

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Timothy Canty, an examining psychiatrist. (Pl.'s MSJ (Dkt. No. 18) at 15-16.) The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v.

1  Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).  The uncontradicted opinion of a treating or
2  examining physician may be rejected only for clear and convincing reasons, while the opinion of
3  a treating or examining physician that is controverted by another doctor may be rejected only for
4  specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at
5  830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial
6  evidence that justifies the rejection of the opinion of either an examining physician or a treating
7  physician. (Id. at 831.)  Finally, greater weight should be given to the "'opinion of a specialist
8  about medical issues related to his or her area of specialty.'"  Benecke v. Barnhart, 379 F.3d 587,
9  594 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)).  Although a treating physician's
10 opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any
11 physician, including a treating physician, if that opinion is brief, conclusory, and inadequately
12 supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting
13 Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).
14      Here, Dr. Timothy Canty examined plaintiff and completed a psychiatric evaluation on
15 June 26, 2009.  (Tr. at 316.)  Based on his examination Dr. Canty opined that:

> Given the severity of her symptoms [plaintiff] would not be able to attend work on a regular basis.  She would be entirely too anxious.  She could not interact effectively with others.  She could not maintain attention and concentration at work.

19 (Id. at 319.)
20      The ALJ afforded "no weight" to Dr. Canty's opinion because it was "not supported by
21 treating source records," was inconsistent with the opinion of two non-examining physicians and
22 because "[a] close reading" of the opinion revealed that Dr. Canty's opinion was merely "a
23 reflection of the claimant's allegations regarding the degree of her symptoms and limitations."
24 (Id. at 26.)
25      The record reflects that in rendering his opinion, Dr. Canty did not review any of
26 plaintiff's psychiatric records and that his examination of plaintiff was essentially unremarkable
27 aside from his observation that plaintiff was "slightly depressed with a slightly labile affect."  (Id.
28 at 318.)  Dr. Canty observed that, although plaintiff was anxious and intermittently tearful, she

1 arrived early for the examination and was well groomed.  (Id. at 317.)  Plaintiff was also
2 cooperative, her speech was clear, and her thoughts were clear, logical and goal-directed.  (Id. at
3 317-18.)  Although plaintiff described her mood to Dr. Canty as "horrible," she also indicated that
4 she had felt that way "since the sixth grade."  (Id. at 318.)  Nonetheless, Dr. Canty found that
5 plaintiff was orientated to day, date, month and year, could immediately recall five digits going
6 forward and three in reverse, could recall three out of three objects at five minutes, had a good
7 fund of knowledge, correctly performed a calculation and was able to note a similarity between
8 apples and oranges when asked.  (Id. at 318.)  This was essentially the extent of Dr. Canty's
9 objective examination.

10    Moreover, in the discussion and prognosis section of his opinion it is apparent that Dr.
11 Canty relied substantially, if not entirely, on plaintiff's own statements concerning her symptoms
12 in forming his stated opinion as to plaintiff's level of impairment.  In this regard, the discussion
13 and prognosis section of Dr. Canty's opinion is comprised almost entirely of merely what plaintiff
14 "describe[d]" and "told" Dr. Canty.  (Id. at 319.)

15    While the court is aware of the appropriate deference usually afforded to the opinion of an
16 examining physician, especially where that opinion is not contradicted by the opinion of a treating
17 physician or even by another examining physician, an ALJ may discount the opinion of an
18 examining physician where that opinion is based on the claimant's subjective history and the
19 claimant's testimony has been properly discounted by the ALJ.  See Tommasetti, 533 F.3d at
20 1041; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Morgan, 169 F.3d at 602.
21 Here, based on what appears to be the inescapable conclusion that Dr. Canty's stated opinion was
22 based solely on plaintiff's subjective testimony, which the court has already found was properly
23 rejected by the ALJ, the court is compelled to find that the ALJ offered specific and legitimate
24 reasons supported by substantial evidence in the record for rejecting examining physician Dr.
25 Canty's opinion.

26    Accordingly, the court finds that plaintiff is not entitled to relief with respect to this
27 claim.
28 /////

### III. Third Party Statements

Plaintiff also argues that the ALJ "failed to properly account" for the third party statements of Timesha Hill. (Pl.'s MSJ (Dkt. No. 18) at 16.) Plaintiff acknowledges that the ALJ actually did discuss those third party statements but argues that the ALJ dismissed them "offhand." (Id.) In this regard, plaintiff asserts that the "ALJ's summary rejection of Ms. Hill's testimony constitutes reversible error." (Id.)

"'In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006)). See also 20 C.F.R. §§ 404.1513(d)(4), (e)). "Such testimony is competent evidence and 'cannot be disregarded without comment.'" Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)).

Here, the ALJ considered Ms. Hill's statements and afforded them limited weight because they were "merely a recitation of the claimant's allegations" and were, therefore, "not fully credible on the same basis as provided for the claimant's lack of credibility." (Tr. at 26.) The record reflects that, in fact, Ms. Hill's statements are consistent with plaintiff's own subjective testimony. Specifically, Ms. Hill's statements characterize plaintiff as being quite impaired, including the assertion that plaintiff "only" irons clothes and that Ms. Hill and her husband do all the "other chores." (Id. at 207.)

As noted above, the court finds that the ALJ provided clear and convincing reasons for rejecting plaintiff's own testimony regarding her subjective complaints. One of those clear and convincing reasons was plaintiff's quite inconsistent statements as to how much cleaning she is able to perform. Because the ALJ provided clear and convincing reasons for rejecting plaintiff's own testimony, and because the third party statements of Ms. Hill were consistent with plaintiff's own testimony concerning plaintiff's subjective symptoms, the court finds that the ALJ also gave clear and convincing reasons for discrediting those third party statements. See Molina, 674 F.3d at 1114 ("if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"); Valentine,

1  574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons
2  for rejecting [Mr.] Valentine's own subjective complaints, and because Ms. Valentine's testimony
3  was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting
4  her testimony."); Melton v. Astrue, 895 F.Supp.2d 1054, 1060 (D. Or. 2012) ("The ALJ may
5  reject lay testimony that mirrors properly rejected claimant testimony."); Ramirez v. Astrue, 803
6  F.Supp.2d 1075, 1079 (C.D. Cal. 2011) ("Where, as here, the lay witness testimony mirrors the
7  claimant's testimony and the claimant is found to be not credible, the ALJ may reject the lay
8  witness testimony for that reason alone.").
9  Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

### IV. Vocational Expert Hypothetical

Plaintiff argues that the ALJ failed to properly determine her Residual Functional Capacity ("RFC") and, therefore, failed to pose a legally adequate hypothetical question to the Vocational Expert ("VE"). (Pl.'s MSJ (Dkt. No. 18) at 17-18.)

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ( "Since the analysis of RFC was flawed and not based on the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be

considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.").

Here, plaintiff argues that the "record is replete with evidence" that her impairments cause frequent emergency medical intervention and require her to "avoid activity in connection with her headaches and dizziness." (Pl.'s MSJ (Dkt. No. 18) at 18.) The ALJ, however, did not find that these limitations existed and the court has found no fault with the ALJ's findings. (Tr. at 16.) The ALJ's hypothetical question posed to the VE properly included only those limitations that the ALJ found to exist. Because the ALJ included all of the limitations he found to exist, and because those findings were supported by substantial evidence, the ALJ did not err in omitting the additional limitations raised by plaintiff. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

**V.    New Evidence**

Finally, plaintiff argues that new evidence has been obtained which is material to the disability determination and was not previously available. In this regard, plaintiff argues that a September 24, 2013 treatment report reference MRI results showing that plaintiff suffer from "significant brain abnormalities involving multiple hyperinensities in the subcortical white matter." (Pl.'s MSJ (Dkt. No. 18) at 17.)

A case may be remanded to the agency for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the prior record. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001); Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)). In order for new evidence to be "material," the court must find that, had the agency considered this evidence, the decision might have been different. See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). "[E]vidence is sufficiently material to require a remand[ ] only where there is a reasonable possibility that the new evidence would have changed the outcome of the . . . determination . . . ." Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984) (internal quotation marks omitted). The new evidence, however, must be probative of the claimant's

11

condition as it existed at or before the time of the disability hearing. See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)).

Here, the MRI scan placed at issue by plaintiff was taken on April 30, 2013, over two years after the ALJ's decision. (Pl.'s Ex. (Dkt. No. 18-1) at 1.) The court cannot find that the new evidence in question is material to plaintiff's condition at or before the time of her disability hearing. See Sanchez, 812 F.2d at 512 ("The new evidence indicates, at most, mental deteriorate after the hearing, which would be material to a new application, but not probative of his condition at the hearing."); Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982) (report from 1980 not material to 1975 decision); Arnold v. Commissioner of Social Sec., No. 2:12-cv-1936 KJN, 2014 WL 1303674, at *12 (E.D. Cal. Mar. 31, 2014) ("plaintiff's new treating records documenting plaintiff's condition after the ALJ's decision are, at most, material to a new application for disability, but cannot be used as a basis to remand this case to the ALJ").

Accordingly, the court finds that plaintiff is not entitled to relief with respect to this claim.

## CONCLUSION

For these reasons the court finds that plaintiff is not entitled to summary judgment in her favor with respect to any of her arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 18) is denied;
2. Defendant's cross-motion for summary judgment (Dkt. No. 21) is granted; and
3. The decision of the Commissioner of Social Security is affirmed.

Dated: September 4, 2014

*[signature]*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\parhan2765.ord.docx

12